**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

HYEON KOOK OH,
Petitioner,
v.
ERNESTO SANTACRUZ, JR., et al.,
Respondents.

Case No. 5:26-cv-05146-SP

**MEMORANDUM OPINION AND ORDER GRANTING PETITION**

## I.
## INTRODUCTION

On September 4, 2026, petitioner Hyeon Kook Oh, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends his detention violates his right to procedural and substantive due process under the Fifth Amendment and the Immigration and Nationality Act ("INA"). The Petition is supported by the declarations of Magomed Gusein Gasanov ("Gasanov Decl."), Ye Jin Kim, and Chloe Yerim Kim ("C. Kim Decl.") and exhibits. Petitioner seeks immediate release from immigration custody, as well as other injunctive relief.

Respondents filed an untimely Notice of Appearance and Answer on September 16, 2026.[1] Docket no. 9. Petitioner filed an Objection to Respondents' Untimely Answer and Reply on September 17, 2026. Docket no. 10.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a 67-year old native and citizen of the Republic of Korea. Pet. ¶ 1.[2] On March 15, 2005, petitioner entered the United States on an L-1 visa. *Id.* ¶ 3; *see* Gasanov Decl., Exs. A-B. Petitioner applied to change his status to an E-2 treaty investor on January 3, 2007, which the United States Citizenship and Immigration Services ("USCIS") granted on January 19, 2007. Pet. ¶¶ 6, 15; *see* Gasanov Decl., Exs. A-B. Petitioner was authorized to stay until December 31, 2008 as an E-2 treaty investor. Pet. ¶ 6; *see* Gasanov Decl., Exs. A-B.

Petitioner has lived continuously in the United States since he entered. *See id.* ¶¶ 15-16. Petitioner lives with his wife and has two children, one a U.S. citizen and the

---

[1] On September 8, 2026, the court issued and served on respondents the court's Notice of General Order 26-05 and Briefing Schedule ("Briefing Order"). Docket no. 4. Under the Briefing Order, respondents' Notice of Appearance was due September 11, 2026 and their Answer was due September 15, 2026. Respondents provide no reason for their failure to comply with the Briefing Order. Nevertheless, because the Answer was filed only one day late, the court considers respondents' untimely response.

[2] The Petition is signed only by petitioner's counsel and it is not verified by petitioner. The court accepts the facts alleged in the Petition: (1) for the purposes of Part II of this opinion if uncontested; (2) if supported by declarations or documents submitted by petitioner as part of the Petition; or (3) if the information could be within counsel's personal knowledge.

other a lawful permanent resident. *Id*. ¶¶ 10-11. Petitioner is an active member of the community. *See id*. ¶ 13.

On December 9, 2024, petitioner's daughter filed a Form I-130 for petitioner, and petitioner filed a Form I-485 application to adjust his status. C. Kim Decl. ¶ 6; Pet. ¶ 17; *see* Gasanov Decl., Ex. D. USCIS approved the Form I-130 on June 10, 2026. Pet. ¶ 20; C. Kim. Decl. ¶ 7; *see* Gasanov Decl., Ex. D. USCIS scheduled petitioner's adjustment interview for July 24, 2026. Pet. ¶ 22; C. Kim Decl. ¶ 8.

Meanwhile, on March 7, 2025, a Korean court issued an arrest warrant naming a suspect with petitioner's date of birth and Korean registration number, and charging him with a breach of trust crime occurring between January 2002 and March 2005. Pet. ¶ 23; Gasanov Decl., Ex. G. Petitioner was unaware of this warrant. Pet. ¶ 24. The Republic of Korea did not issue an extradition request and there was no Red Notice. *Id.* ¶ 25(c).

On June 17, 2026, one week after USCIS approved the Form I-130, USCIS identified petitioner as a visa overstay to ICE. Pet. ¶ 28; *see* Gasanov Decl., Ex. B. When petitioner appeared at his adjustment interview on July 24, 2026, officers from the Foreign Fugitive Unit arrested petitioner. Pet. ¶¶ 30-31; *see* Gasanov Decl., Ex. B. It is unclear if the administrative arrest warrant was issued prior to his arrest since the Notice of Custody Determination was signed two hours after petitioner's arrest. Pet. ¶¶ 34-36; *see* Gasanov Decl., Ex. A. Petitioner was not provided prior notice that he would be detained, nor was he provided a pre-detention individualized custody determination. *See* Pet. ¶¶ 39-43, 83.

On August 27, 2026, petitioner appeared before an immigration judge for a bond hearing. *See id.* ¶ 47; *see* Gasanov Decl., Ex. H. The immigration judge denied bond on the ground that petitioner failed to meet his burden to establish that he is not a flight risk. Pet. ¶ 47; *see* Gasanov Decl., Ex. H.

Petitioner requires regular medical care for his diabetes and issues related to his gastrectomy and prior bout of sepsis. *See* Pet. ¶¶ 50-65. Petitioner has experienced

delays in receiving his medication, and when he receives it he does not receive the exact medication he had been taking. *Id.* ¶ 61.

## III.

## DISCUSSION

Petitioner raises three claims for relief: (1) his detention violates his procedural due process rights under the Fifth Amendment; (2) his detention violates his substantive due process rights under the Fifth Amendment; and (3) his arrest violated the INA. Pet. ¶¶ 67-140. Respondents do not address petitioner's arguments and instead argue the Petition should be denied because petitioner received a bond hearing, petitioner fails to provide any evidence the bond hearing was defective, and he must exhaust his administrative remedies. Answer at 2-5.

### A. This Court Has Jurisdiction Over the Claims in the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released from respondents' custody because his detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. ¶¶ 67-121. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of

§ 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. <u>Petitioner's Detention Without Adequate Procedural Protections Violated Due Process</u>**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. <u>Petitioner Has a Protected Liberty Interest</u>**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues he has a liberty interest in his release from immigration custody. *See* Pet. ¶¶ 71-75.

"Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal.

2025). Courts have repeatedly recognized that conditional release from custody may give rise to a protected liberty. *See Young v. Harper*, 520 U.S. 143, 147-49 (1997); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Some courts have found that the government's decision not to detain a non-citizen during immigration processes, such as while an asylum application is pending, similarly gives rise to a protected liberty interest. *See Kalkan v. Chestnut*, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026) (petitioner had liberty interest in being free from detention because immigration officials were aware of his presence, initially approved of that presence, and did not promptly detain him when that status expired); *Kharitonova v. Albarran*, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (petitioner had the same liberty interest as an individual initially detained and released because the government made a decision not to detain her in the first place); *but see Jemna v. Warden of Otay Mesa Det. Ctr.*, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) ("Although Petitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole.").

Here, petitioner has a liberty interest in his release. Petitioner entered the United States in 2005 and has resided here ever since. Pet. ¶ 3; *see id*. ¶¶ 9-16. Petitioner has extensive family and community ties, and he has filed for adjustment of status. *Id.* ¶¶ 10-13, 45. Petitioner established a life for himself in the United States and has therefore acquired a personal liberty interest in his release from immigration custody. *See, e.g., Xianming H. v. Warden*, 2026 WL 1283415, at *3 (E.D. Cal. May 11, 2026) (petitioner, who overstayed a tourist visa and has a pending asylum application, "has a clear liberty interest" that is protected by due process); *Saadi v. Larose*, 2026 WL 892831, at *4 (S.D. Cal. Mar. 30, 2026) (noncitizen who entered on a tourist visa and has a pending asylum application "has developed an interest in remaining during his time here"); *Kharitonova*, 2026 WL 531441 at *2 (same).

**2. Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Detention Under the Due Process Clause**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner has significant ties to family and the community in the United States. *See* Pet. ¶¶ 10-13. As such, his personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear

that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain him in the first place. *See, e.g.*, *Kalkan*, 2026 WL 7881125, at *1; *Kharitonova*, 2026 WL 531441, at *2-*3; *see also Victor B.P. v. Warden*, 2026 WL 1493987, at *4 (E.D. Cal. May 28, 2026) (state court judge's release of petitioner suggests he found petitioner was not a danger to the community). Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same). Indeed, even after Korea issued the arrest warrant in March 2025, respondents not only decided to still not detain petitioner, USCIS approved the Form I-130 over a year later. Pet. ¶¶ 20, 23; *see* Gasanov Decl., Exs. D, G.

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. *See Xianming H.*, 2026 WL 1283415, at *4 ("[T]he Government's interest is low."); *see also Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025) ("there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing"). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Xianming H.*, 2026 WL 1283415, at *4; *Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted).

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore,

the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment.

But the inquiry does not end here. A month after petitioner was detained, he received a bond hearing and thus was afforded some process. Pet. ¶¶ 46-47; *see* Gasanov Decl., Ex. H. Petitioners contend the proper remedy is release from custody because the post-detention hearing did not cure the denial of pre-detention notice and hearing. Pet. ¶¶ 84, 142; Reply at 2-3. The question is whether petitioner's post-deprivation hearing satisfies due process.

"[T]he purpose of habeas remedies is to put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (citation and quotation marks omitted). The Ninth Circuit has found that a petitioner is only entitled to relief if he can demonstrate prejudice from the due process violation; however, those cases did not concern pre-deprivation and post-deprivation hearings. *See Orellana v. Garland*, 2024 WL 2795192, at *2 (9th Cir. May 31, 2024) ("Generally, an individual may obtain relief for a due process violation only if she shows that the violation caused her prejudice, meaning the violation potentially affected the outcome of the immigration proceeding.") (cleaned up); *U.S. v. Landeros-Morales*, 840 F. App'x 911, 912 (9th Cir. 2020) (Assuming the immigration judge violated due process, "[petitioner] is not entitled to relief because he cannot demonstrate prejudice."). Indeed, the Supreme Court has found that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Mathews*, 424 U.S. at 331.

Accordingly, many district courts in this Circuit "have ordered release even where a belated bond hearing has taken place," *Kumar v. Rios*, 2026 WL 1764923, at *7 (C.D. Cal. June 12, 2026) (listing cases), or taken the position "that any post-deprivation process cannot cure the constitutional violation when the non-citizen was entitled to pre-deprivation notice and hearing." *Andriasyan v. Warden*, 2026 WL 1601905, at *9 (C.D. Cal. June 1, 2026); *see, e.g.*, *Villegas Molina v. Mullin*, 2026 WL 1182194, at *3 (C.D.

Cal. Apr. 23, 2026) (noting that the severe delay of post-deprivation bond hearings cannot undo the harms of immigration detention such as the loss of jobs and subpar medical care); *Mumaev v. Samaia*, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (a post-deprivation hearing cannot support a petitioner's continued detention when the underlying arrest, revocation of parole, and redetention violated due process); *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882 (C.D. Cal. 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a pre-deprivation hearing required by due process."); *see also Gonzalez v. Joyce*, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2015) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment."). Even courts that have found a post-deprivation hearing may arguably satisfy due process have raised questions of prejudice and adequacy. *See, e.g., Herman v. DHS*, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) (finding petitioner "was likely prejudiced by being forced to litigate a bond hearing while he is detained . . . [as] detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing"): *Saballos Rosales v. Noem*, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (a deficient post-deprivation hearing is "no substitute" for the pre-detention process).

On the particular facts and circumstances of this case, the court agrees that the belated bond hearing did not remedy the due process violation. Because petitioner's re-detention was unlawful, the proper remedy is release from custody. *See Singh*, 2025 WL 3251437, at *9; *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *7 (C.D. Cal. Dec. 26, 2025); *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

### 3. Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in the immigration parole revocation context, courts have routinely found that individuals should be "afforded a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight." *Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *8; *Pinchi*, 792 F. Supp. 3d at 1038; *Padilla v. Bowen*, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025).

## C. Petitioner's Remaining Claims

Petitioner also argues that respondents have violated his right to substantive due process under the Fifth Amendment and the INA. Pet. ¶¶ 98-147. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claims. Petitioner may raise the claims again if he is subject to any future detention.

## IV.

## ORDER

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Hyeon Kook Oh (A# 235-

376-368) from immigration custody; (3) respondents shall return any confiscated property and documents to petitioner upon his release; (4) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (5) respondents shall file a status report no later than **September 28, 2026,** confirming that petitioner has been released from respondents' custody.

Dated: September 23, 2026

SHERI PYM
United States Magistrate Judge